# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. TAUTGES,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br><br>GLOBAL DATACENTER<br>MANAGEMENT, INC., et al.,<br><br>　　　　　　　　　Defendant. | CASE NO. 09 CV 785 JLS (BGS)<br><br>**ORDER: (1) GRANTING JOINT MOTION TO DISMISS DEFAMATION CAUSE OF ACTION; (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (3) GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF**<br><br>(Doc. Nos. 31, 37.) |

　　　Presently before the Court is Defendant Global Datacenter Management, Inc.'s motion for summary judgment of Plaintiff Daniel J. Tautge's First Amended Complaint ("FAC"). Also before the Court is a joint motion stipulating to the dismissal of Plaintiff's third cause of action for defamation. For the reasons below, the Court **GRANTS** the parties' joint motion to dismiss the third cause of action for defamation; **DENIES** Defendant's motion for summary judgment of the first cause of action for breach of contract and the second cause of action for breach of statutory duty; and *sua sponte* **GRANTS** partial summary judgment in favor of Plaintiff.

//
//
//

**BACKGROUND**

**I.     Factual Background[1]**

This action arises out of the termination of Plaintiff Daniel Tautges' employment by Defendant Global Datacenter Management, Inc. ("Inc."), the North American subsidiary of Defendant Global Datacenter Management, Ltd. ("Ltd.").[2] Defendant employed Plaintiff as its President for just over a year, commencing December 15, 2007 and terminating January 23, 2009. Pursuant to Plaintiff's employment, Defendant executed an offer letter which both parties signed. (Tautges Decl. ISO MSJ, Ex. 1 ("Offer Letter").) As to severance pay, the Offer Letter reads:

> While we anticipate that our employment relationship will be long and mutually rewarding, in the event that your employment at Global Datacenter Management is terminated by the Company, the Company will make a severance payment based on your length of service on the following terms:
>
> 1 – 12 months: No severance pay
>
> 13 – 24 months: 3 months of your Base Salary
>
> 25 + months: 6 months of your Base Salary
>
> * * *
>
> In the event that the Company is acquired or undertakes an IPO the severance payment will be 6 months of your Base Salary.

(Offer Letter at 2.) Upon Plaintiff's termination in January 2008, Defendant paid three months severance pay consistent with his length of service. Plaintiff contends that he was entitled to 6 months severance pay given the purported acquisition of Defendant, discussed at length below.

Plaintiff commenced this action in San Diego Superior Court on March 17, 2009. The action was removed to federal court on April 16, 2009 on the basis of diversity jurisdiction.[3] (Doc. No. 1.) The Complaint alleged five causes of action: (1) Wrongful termination in violation of public policy; (2) Breach of Contract; (3) Breach of Statutory Duty; (4) Defamation; and (5) Alter

---

[1] The following facts are undisputed unless otherwise noted.

[2] "Defendant" as used throughout this Order is used generically and does specifically refer to either company. When material, the Court will specify the companies.

[3] As such, California law applies.

Ego Liability. (Doc. No. 1.) On April 21, 2009, Defendant moved to dismiss the first, third and fifth cause of action, which this Court granted on November 13, 2009. (Doc. Nos. 5 & 21.) Though the Court granted Plaintiff leave to amend these causes of action, he did not do so. Instead, on December 14, 2009, Plaintiff filed a First Amended Complaint ("FAC") maintaining only the causes of action for defamation, breach of contract, and breach of statutory duty insofar as it relied on non-dismissed provisions. (Doc. No. 26.)

On March 18, 2010, Defendant filed the present motion for summary judgment of all three causes of action. (Doc. No. 31.) On June 17, 2010, both parties filed a joint motion to dismiss the cause of action for defamation. (Doc. No. 37.) As such, Plaintiff's opposition to the motion for summary judgment, which was filed on June 18, 2010, addresses only the breach of contract and breach of statutory duty causes of action. (Doc. No. 40.) Defendant filed its reply on July 8, 2010. (Doc. No. 45.) The motion was heard before this Court on August 5, 2010 and thereafter taken under submission.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. Breach of Contract

Plaintiff contends that Defendant breached its contract by failing to pay 6 months of severance pay pursuant to the Offer Letter. Specifically, Plaintiff asserts that Defendant was acquired and, as such, the provision providing for 6 months severance pay applies. Defendant, however, argues that this provision applies only if the termination was a *result* of the acquisition and that, in any event, Defendant was not acquired. As such, the Court must interpret the Offer Letter as it pertains to these two issues.

Under California law, contract interpretation is a question of law. *SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Ins. Co.*, 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004); *see also Parsons v. Bristol Develop. Co.*, 62 Cal. 2d 861 (1965). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Byrne v. Laura*, 52 Cal. App. 4th 1054, 1066 (1997). "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (1992).

In interpreting the contract, a court must first determine whether the contract is ambiguous. *See Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). "A contract provision is considered ambiguous when the provision is susceptible to more than one reasonable interpretation." *SDR Capital Mgmt.*, 320 F. Supp. 2d at 1046 (citing *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003)). However, the "mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." *Palmer v. Truck Ins. Exchange*, 21 Cal. 4th 1109, 1118

(1999). "Ambiguity cannot be based on a strained instead of reasonable interpretation" of the contract's terms. *McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 772, 776 (1983). The contract must be interpreted as a whole**.** *MacKinnon*, 31 Cal. 4th at 648. Further, the Court can determine whether the contract is ambiguous on its face or by using extrinsic evidence of the parties' intent. *Oceanside 84, Ltd. v. Fidelity Fed. Bank,* 56 Cal. App. 4th 1441, 1448 (1997); *see also Founding Members*, 109 Cal. App. 4th at 955. If no parol evidence is introduced to interpret the contract, or if the evidence is not contradictory, the trial court's resolution of the ambiguity is a question of law. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1992). However, "when two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory." *WYDA Assoc. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) (quoting *Walter E. Heller Western Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (1987)).

The key severance provision at issue in this case states: "In the event that the Company is acquired or undertakes an IPO the severance payment will be 6 months of your Base Salary." (Offer Letter at 2.) The provision does not explicitly require the termination to be a result of or because of the acquisition or IPO, as Defendant contends. Instead, the plain language of the provision merely refers to the "event" of an acquisition or IPO, with no time period and no causal connection to the severance payment. Moreover, a review of the contract as a whole further supports this interpretation. Prior to this provision, the contract sets forth the severance payment depending on Plaintiff's length of service, ranging from no severance pay to 6 months severance pay. This paragraph is followed by a separate paragraph indicating that any modification to these terms must be in writing and that, if Plaintiff is to voluntarily terminate his employment, Defendant asks for 30 days notice prior to his departure. (*Id.*) Thereafter, separate from the "length of service" severance provision, the acquisition/IPO severance provision is stated. Again, there is no indication in this statement regarding any length of service requirement or impact or that the termination must be a result of an acquisition or IPO, just that if there is ("in the event") an acquisition or IPO, any severance payment is 6 months of Plaintiff's Base Salary.

As such, the Court finds the contract unambiguous based on its plain language alone and that it is not "reasonably susceptible" to the interpretation proffered by Defendant, as that would inexplicably and improperly insert words and causal requirements that are not there and which are not otherwise implied by the contract as a whole. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992); *see also Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968) ("[E]xtrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract . . .").

Further, the Court, after provisionally receiving all extrinsic evidence, determines that the language is still not "reasonably susceptible" to the interpretation urged and therefore does not admit the extrinsic evidence. *See Winet,* 4 Cal. App. 4th at 1165 ("The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.'"). Here, the evidence offered by Defendant does not sufficiently support than an insertion of a causal requirement is a reasonable interpretation of the language at issue. Defendant offers testimony by Plaintiff that he clearly understood the contract and that he believe he would receive 6 months severance payment if he was terminated because of an acquisition or IPO. (Tautges Depo. at 134:25-135:22; 139:13-18.) This evidence, however, only establishes that Plaintiff understood the contract language to unambiguously mean what he believed it meant and that one instance in which he believed he would be entitled to 6 months payment under that severance provision would be if the termination was a result of said acquisition or IPO,[4] not that the Offer Letter's language or the parties' intent was to require the termination and resulting severance to be a result of the acquisition or IPO. As such, the Court does not admit the extrinsic evidence submitted in order to interpret the clearly unambiguous language in the Offer Letter. *See Winet v. Price*, 4 Cal. App. 4th at 1165; *see also Blumenfeld v. R.H. Macy & Co.*, 92 Cal. App. 3d 832, 840 (1989).

The Court therefore **DENIES** Defendant's motion for summary judgment insofar as it

---

[4] For these same reasons, the Court rejects Defendant's contention that Plaintiff's declaration plainly contradicts his deposition testimony so as to render the declaration an inadmissible "sham affidavit." (Reply at 4-6.)

1  asserts that the Offer Letter unambiguously states that the severance must be a result or caused by
2  the acquisition or IPO.[5] Instead, the Court *sua sponte* **GRANTS** summary judgment in favor of
3  Plaintiff, finding that the contract language unambiguously does not insert a causal requirement and
4  instead entitles Plaintiff to 6 months severance pay at any time after such an acquisition or IPO
5  occurs.[6]

6  The Court further finds it unambiguous under the plain terms of the agreement that the
7  Company which must be acquired or partake in an IPO sufficient to trigger this severance provision
8  is Global Datacenter Management, Inc., the subsidiary. The Offer Letter clearly defines "the
9  Company" as Global Datacenter Management, Inc. (Offer Letter at 1.) In his declaration, Plaintiff
10 asserts that all parties to the agreement and in negotiations understood "the Company" was in
11 reference to both "Inc." and "Ltd." and that only "Ltd." would be involved in an IPO, sale, or
12 further investment. (*See* Tautges Decl. at ¶¶ 2-3.) Not only does the Court finds that the express
13 language of the contract is not "reasonably susceptible" to this interpretation given the clear
14 language in the contract, but parol evidence is not admissible if it "flatly contradict[s] the express
15 terms of the agreement." *See Winet*, 4 Cal. App. 4th at 1167 (citing *Stevenson v. Oceanic Bank*,
16 223 Cal. App. 3d 306, 317-18 (1990)). Plaintiff's declaration that the parties intended "the
17 Company" which must be acquired to mean both "Inc." and/or "Ltd." directly contradicts the
18 language of the contract and its definition of "the Company." Therefore, the Court finds this
19 extrinsic evidence inadmissible for this purpose. *See id.*

20 The inquiry, however, does not end there. The Court finds a genuine issue of material fact

---

[5] In his moving papers, Defendant makes much of the fact that there is no time limit on the severance provision at issue, arguing that it defies logic for the Court to find that Plaintiff would be entitled to 6 months severance payment even though the purported acquisition or IPO took place, for example, 10 years prior to Plaintiff's termination. This is a moot point. After Plaintiff worked for 25 months or longer, he would be entitled to 6 months of his base salary as severance regardless of which provision he invoked to receive that 6 month payment. Thus, the acquisition/IPO provision serves to protect Plaintiff only within the first 2 years of Plaintiff's employment when he would otherwise be entited to no severance payment or only 3 months of his base salary. Accordingly, in viewing the contract as a whole, the lack of time limitation within the acquisition/IPO provision does not make this severance provision more or less reasonably susceptible to including a causal requirement.

[6] A court may sua sponte grant summary judgment to the non-moving party. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982); *Hood River County v. U.S. Dept. of Labor*, 532 F.2d 1236 (9th Cir. 1976). Thus, because the Court finds no ambiguity in favor of Plaintiff's interpretation, it grants partial summary judgment accordingly.

1  to be determined at trial as to whether "Inc." was "acquired" sufficient to trigger this severance
2  provision.[7] "Acquired" is not defined in the contract. The plain and common meaning of the term
3  "acquired" is a change of ownership or control in the company which was acquired. *See, e.g.*,
4  *Muething v. Franchise Tax Bd.*, 52 Cal. App. 4th 275, 282 (1997) ("[I]n common parlance, one
5  acquires property when one obtains ownership, possession, or control over it.") However, the
6  extent of said change of control or ownership is not easily determined by common meaning of the
7  term and the Offer Letter itself lends no clarification. Plaintiff contends that the approximately $16
8  to $20 million investment made by Balderton's Capital in exchange for 28.5% of the outstanding
9  shares and the resulting change in board members meets the definition of "acquired" as used in the
10 contract. (*See* Tautges Depo. at 136-138; *see also* Tautges Decl. ¶ 7; Edelson Decl., Ex. 3 (Nisbett
11 Depo) at 27:17-29:20, 31:18-32:2; 41:21-25.) Further, Plaintiff asserts that this change of control
12 and ownership of "Ltd." resulted in an acquisition of "Inc." because "Ltd." is the parent company
13 of the wholly-owned subsidiary "Inc." (*See* Tautges Depo. 137:13-25; 137:17-21.) Finally,
14 Plaintiff's declaration supports the reasonable interpretation that the purported acquisition or
15 undertaking of an IPO by "Ltd." would include an acquisition or IPO of "Inc." considering only the
16 parent company in this case would reasonably be acquired or undertake an IPO. (Tautges Decl. ¶
17 4.) Moreover, there is some evidence that the board of "Inc." changed, as well. (*See* Tautges Decl.
18 ¶ 7; *see also* Nisbett Depo. at 40:15-41:20.) As such, Plaintiff interprets "acquired" as used in the
19 Offer Letter to generally mean "if the company raised money so that it led to changes in
20 governance and top management." (Tautges Decl. ¶ 4.)

21  Defendant, however, argues that the conpany was not "acquired" because the largest
22 shareholder both prior to and after Balderton's investment, South Pacific Holdings, remained the
23 same. (Nisbett Depo. at 32:10-33:13). The percentage of shares owner by South Pacific Holdings,
24 however, did increase. (*Id.*) Further, Defendant argues that an acquisition did not occur because
25 the Chairman of the board of directors, Mr. John Moreton, remained the same after Balderton's
26 investment. (*Id.* 28:21-29:6). Plaintiff, however, asserts that Bernard Liautaud became the

---

28 [7] Plaintiff does not contend that the severance provision at issue was triggered because the Company undertook an IPO, so the only issue is the acquisition prong of the provision. (*See* Tautges Depo. at 136:10-12.)

1  Chairman and that other board members changed, and the total number of board member was
2  reduced, as well.  (Tautges Depo. at 137:6-12; Tautges Decl. ¶ 7; *see also* Nisbett Depo. at 40:15-
3  41:20.)

4  Having considered this extrinsic evidence on a provisional basis, the Court finds the
5  contract provision and the meaning of "acquired" reasonably susceptible to both Defendant and
6  Plaintiff's interpretation and thus admits the extrinsic evidence cited above.  Accordingly, the Court
7  finds the meaning of the term "acquired" as used within the Offer Letter ambiguous.  The evidence
8  submitted, however, does not aid the Court in interpreting the ambiguity in favor of either
9  interpretation.  Instead, the Court finds that the extrinsic evidence is contradictory as to whether
10 Inc. was acquired under the terms of the Offer Letter so as to invoke this severance provision at
11 issue.  *See WYDA Assocs. v.* Merner, 42 Cal. App. 4th at 1710 ("When two equally plausible
12 interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in
13 interpreting the agreement, thereby presenting a question of fact which precludes summary
14 judgment if the evidence is contradictory." (quoting *Walter E. Heller Western, Inc.*, 196 Cal. App.
15 3d at 158); *see also Byrne*, 52 Cal. App. 4th at 1066 ("These conflicting interpretations and any
16 others supported by reasonable inferences from the evidence must be resolved by a trier of fact . . .
17 [and therefore] summary adjudication is an inapporpriate means of resolving the ambiguity."
18 (citations omitted)).  Thus, the Court **DENIES** Defendant's motion for summary judgment of the
19 cause of action for breach of contract.

20 **II.     Breach of Statutory Duty**

21 Plaintiff's second cause of action is for breach of statutory duty; specifically, California
22 Labor Code §§ 200(a), 201, and 203 by "failing to pay [him] six months of severance as required
23 by his employment contract."  (FAC ¶ 10.)  As such, because the Court denies Defendants' motion
24 for summary of the cause of action for breach of contract, the Court **DENIES** Defendant's motion
25 for summary judgment of the cause of action for breach of statutory duty.

26 //
27 //
28 //

**CONCLUSION**

For those reasons, the Court **GRANTS** the parties joint motion to dismiss the defamation cause of action; **DENIES** Defendant's motion for summary judgment; and **GRANTS** partial summary judgment in favor of Plaintiff as to the issue of causation in the acquisition/IPO severance provision as discussed above.

DATED: August 26, 2010

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge