# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| DANIEL J. TAUTGES,<br><br>                               Plaintiff,<br>vs.<br><br>GLOBAL DATACENTER MANAGEMENT, INC., GLOBAL DATACENTER MANAGEMENT LIMITED, and DOES 1–10,<br><br>                               Defendants. | CASE NO. 09CV785 JLS (BGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER MODIFYING THE SCHEDULING ORDER AND PERMITTING PLAINTIFF TO FILE AN AMENDED COMPLAINT**<br><br>(Doc. No. 49.) |
|---|---|

Presently before the Court is Plaintiff Daniel J. Tautges' (Plaintiff or Tautges) motion for an order modifying the scheduling order and permitting plaintiff to file an amended complaint. (Doc. No. 49 (Mot. to Amend).) Also before the Court is Defendant Global Datacenter Management, Inc.'s (Defendant or Global Datacenter) response in opposition. (Doc. No. 52 (Opp'n).) For the reasons stated below, the Court **DENIES** Plaintiff's motion.

## BACKGROUND

This case is past the summary judgment stage, and for the purposes of this motion, only a broad history is necessary to orient the parties. Plaintiff filed a first amended complaint (FAC) on December 14, 2009. (Doc. No. 26 (FAC).) The FAC alleged claims for breach of contract, breach of statutory duty, and defamation. Defendant motioned for summary judgment three months later.

1  (Doc. No. 31.)  After the dust settled, the FAC was left with two causes of action, breach of contract
2  and breach of statutory duty.  (Doc. No. 50.)

3  In the meantime, Plaintiff had filed the present motion for an order modifying the scheduling
4  order and permitting plaintiff to file an amended complaint.  The Court had originally set a deadline
5  of July 17, 2009, for any party to amend its pleadings and had extended the deadline to November 27,
6  2009, for Tautges to amend a "wrongful termination" claim.  (Doc. No. 21.)  Plaintiff now wishes to
7  file a second amended complaint (SAC) that includes a wrongful termination claim.

## LEGAL STANDARD

9  If there is a deadline for amendment set by a scheduling order, and the deadline has passed,
10  an amendment to the pleadings requires that the scheduling order be modified.  *Coleman v. Quaker*
11  *Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  The scheduling order may be modified by leave of
12  court on a showing of good cause and with the judge's consent.  Fed. R. Civ. P 16(b)(4).

13  Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).
14  But while the rule should be interpreted extremely liberally, it should not be granted automatically.
15  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  A trial court may deny such a
16  motion if permitting an amendment "would prejudice the opposing party, produce an undue delay in
17  the litigation, or result in futility for lack of merit."  *Id.*  A proposed amendment is futile if no set of
18  facts can be proved under amendment to pleadings that would constitute a valid and sufficient claim.
19  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## ANALYSIS

21  Plaintiff wishes to amend his first amended complaint to add a claim for wrongful termination.
22  Plaintiff proposes that a recent California court of appeal case, *Silguero v. Creteguard*, 187
23  Cal.App.4th 60 (Cal. Ct. App. 2010), created a new basis for wrongful termination under California
24  Business and Professions Code § 16600.  And because this avenue was not available to Plaintiff when
25  he filed the first amended complaint, Plaintiff requests leave to include this claim.

26  The Court has broad discretion to grant leave to amend.  *See Jackson*, 902 F.2d at 1387.  But
27  leave should be denied where amendment would be futile.  *Saul v. United States*, 928 F.2d 829, 843
28  (9th Cir. 1991). Whether amendment would be futile depends on whether *Silguero* actually provides

a basis for wrongful termination under the facts of this case. If it does, the Court would inquire into any issues of prejudice or undue delay. If *Silguero* does not provide a basis for wrongful termination, amendment would be futile.

### I. Silguero v. Creteguard

*Silguero* presented a question whether a terminated employee had a viable claim for wrongful termination in violation of public policy under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980). The California Supreme Court held in *Tameny* that "although employers have the power to terminate employees at will, they may not terminate an employee for a reason that is contrary to public policy." *Tameny*, 27 Cal.3d at 178. One source of public policy is California Business and Professions Code § 16600. Section 16600 states that, with few exceptions, "every contract by which anyone is restrained from engaging in lawful profession, trade or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. And it "evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 946 (2008). In *VLS Systems, Inc. v. Unisen, Inc.*, the public policy underlying § 16600 was used to void a contract in which two companies agreed not to hire each other's employees after termination. *VLS Systems, Inc. v. Unisen, Inc.*, 152 Cal.App.4th 708 (Cal. Ct. App. 2007).

The *Silguero* case involved three players: Rosemary Silguero, Floor Seal Technology, Inc. (FST), and Creteguard, Inc. In 2003, Silguero worked as an in-house sales representative for FST. Four years later, FST threatened to fire Silguero unless she signed a confidentiality agreement. As part of this agreement, Silguero was prohibited from participating in any sales activities for eighteen months following departure or termination. She was terminated two months later.

Soon after she was fired, Silguero found employment with Creteguard. But it was a short affair. About a month into her tenure, Creteguard informed Silguero that they would have to terminate her because she signed a non-compete with FST. And even though Creteguard believed that non-compete agreements were unenforceable in California, Creteguard wished to "keep the same respect and understanding with colleagues in the same industry." *Silguero*, 187 Cal.App.4th at 65.

Silguero brought suit for wrongful termination against Creteguard. Silguero "alleged that the noncompetition agreement enforced by Creteguard was void pursuant to section 16600," and that

Creteguard's enforcement and ratification of an illegal and void non-compete agreement violated public policy." *Id.* Creteguard argued that there was no public policy prohibiting a subsequent employer from honoring a non-compete agreement entered into by an employee and former employer. *Id.*

The *Silguero* court disagreed with Creteguard. The Court held that Creteguard's "understanding" and enforcement of another companies non-compete agreement was "tantamount to a no-hire agreement" between companies. *Id.* at 70. Thus, for the same reasons set out under *VLS*—that contracts limiting the mobility of employees are void—the *Silguero* court permitted a wrongful termination suit.

Post *Silguero*, we are left with a "new" wrongful termination holding; "understandings" that are tantamount to non-compete agreements are void and unenforceable under § 16600 because they unfairly limit an employee's mobility the same way a no-hire contract would. This is combined with *VLS*—holding that two companies cannot contract to not hire each other's employees—and § 16600 —voiding most contracts preventing employees from moving freely.

## II.   The Present Case

Tautges was a Global Datacenter employee in San Diego, California. (FAC ¶ 1.) Global Datacenter employed Tautges for just over a year, commencing December 15, 2007, and terminating January 23, 2009. (*Id.* ¶ 3.) As part of his job, Plaintiff hired additional employees, one of whom was Robert Schmidt. (Doc. No. 49-2 ¶ 4.) Schmidt was a former employee of Visual Network Design, Inc., dba Rackwise, and Rackwise was a Global Datacenter competitor. (*Id.* ¶ 5.) Rackwise began to threaten Global Datacenter, Global Datacenter's parent corporation, Schmidt, Plaintiff, and another Global Datacenter employee with claims of unlawful solicitation of customers and misuse of customer information. (*Id.*) Rackwise demanded compensation, attorney's fees, and that Global Datacenter fire Plaintiff. (*Id.*) On January 23, 2009, Global Datacenter, wanting to stop paying legal bills, fired Plaintiff. (*Id.* ¶ 7; Doc. No. 54-2 Page 23.)

Plaintiff now wishes to file a SAC that includes a wrongful termination claim against Global Datacenter. The wrongful termination claim would be based on § 16600 and *Silguero*. Under the facts stated, Plaintiff asserts that *Silguero* provides him a with a cause of action he did not have before.

1  Plaintiff argues that *Silguero* should be "construed to apply to any adverse employment action that
2  operates to prevent competition and employment mobility, and particularly to firings based upon a
3  concern about being sued by an employee's former employer over fair competition." (Mot. to Amend
4  at 6.) At its core, Plaintiff wants *Silguero* to prevent former employers from pressuring current
5  employers to fire an employee and to prevent current employers from consenting to such demands.

6  Plaintiff wishes to extend *Silguero* far beyond the four corners of the decision and even further
7  beyond § 16600. Section 16600 voids contracts limiting employee mobility. *VLS*, the case heavily
8  relied on in *Silguero*, used § 16600 to void a no-raiding contract between two employers. And
9  *Silguero* voided one employer's tacit acceptance of another employer's non-compete contract. All
10 three have something in common, an agreement. And there is no agreement, express or implied, in
11 the present case. The Court cannot find that Global Datacenter's response to Rackwise's litigation
12 threats constitute the type of agreement envisioned by § 1660, *VLS*, and *Silguero*. Reading *Silguero*
13 as Plaintiff wishes would tear the decision from its foundation. Plaintiff did not have a valid § 16600
14 claim prior to *Silguero*, and he cannot find one after.

15 **III.   Conclusion**

16 Amendment would be futile because Plaintiff does not have a valid § 16600 claim. Plaintiff
17 does not allege facts sufficient to establish a claim under § 16600 and progeny. He attempts instead
18 to stretch *Silguero* over the facts as alleged. And the case cannot stretch that far. No possible
19 amendment can cure such legal deficiency.

20 **CONCLUSION**

21 For the reason stated above, the Court **DENIES** Plaintiff's motion to amend his complaint.

22 **IT IS SO ORDERED.**

24 DATED: October 12, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge